Joan A. GERMAN, Arnold Merkle and Bryan Vergin, Plaintiffs-Respondents,

v.

WISCONSIN DEPARTMENT OF TRANSPORTATION, Division of State Patrol, State of Wisconsin, Charles Thompson and William L. Singletary, Defendants-Appellants.†

Court of Appeals

*No. 98–0250. Submitted on briefs August 7, 1998.—Decided December 3, 1998.*

(Also reported in 589 N.W.2d 651.)

†Petition to review granted.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Richard B. Moriarty,* assistant attorney general with whom on the briefs was *James E. Doyle,* attorney general.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Bruce M. Davey* of *Lawton & Cates, S.C.* of Madison.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J.   The Wisconsin Department of Transportation, Division of State Patrol (DOT) appeals an order denying its motion to dismiss the wage claims of several state patrol officers.[1] The officers sued the

---

[1] In addition to the DOT, the defendants-appellants include the State of Wisconsin, and two DOT officials, Charles Thomp-

527

DOT under § 109.03(5), STATS., seeking compensation for their meal breaks. The officers assert that their meal breaks are not free of job duties and are therefore compensable work time under WIS. ADM. CODE § DWD 274.02(3), which requires employers to pay for on-duty meal periods.

The DOT contends that it is protected by sovereign immunity, and is therefore immune from suit. The DOT also contends that the officers' claim is not a wage claim that can be brought under § 109.03(5), STATS. The DOT asserts that a claim under the hours and overtime regulations in WIS. ADM. CODE ch. DWD 274 may not be brought directly to court by an employee, but must first be brought to the Department of Workforce Development (DWD).

We conclude that § 109.03(5), STATS., waives the State's sovereign immunity with respect to claims by state employees for wages due. We also conclude that the right of action created by § 109.03(5), permits employees to sue employers for wage claims deriving from hours and overtime regulations without first pursuing the claim with DWD. Accordingly, we affirm the trial court's denial of the DOT's motion to dismiss.

## BACKGROUND

For the purposes of considering the DOT's motion to dismiss the officers' suit, we accept as true the facts alleged in the officers' complaint, which are as follows. The officers work in eight-and-one-half hour shifts, which include an uncompensated half-hour meal period. During their meal periods, the officers must remain in their assigned work areas, remain in full

son and William L. Singletary. We will refer to the defendants-appellants collectively as the DOT.

uniform, follow all rules of conduct—including prohibitions against smoking and sleeping, and remain in continuous radio contact in order to respond to emergency calls. The officers are not free to leave their assigned areas to engage in personal business during their meal breaks. In sum, the officers allege that their meal breaks are spent predominantly for the benefit of their employer, the DOT.

The officers sued the DOT under § 109.03(5), STATS., seeking wages earned but unpaid.[2] The DOT moved to dismiss the officers' complaint. The trial court denied the DOT's motion, and the DOT petitioned this court for leave to appeal. We granted leave to bring this appeal of the order denying DOT's motion to dismiss. *See* RULE 809.50, STATS.

## ANALYSIS

At issue here is the interpretation of Wisconsin's wage claim law, ch. 109, STATS. The wage claim law requires employers to pay wages promptly. The law provides for, and encourages, enforcement by DWD, but it also grants employees a private right of action against any employer who does not promptly pay the full amount of wages due. The provision in ch. 109 granting employees a private right of action is cast in broad terms, but it does not expressly authorize

---

[2] The officers also sued under the federal Fair Labor Standards Act (FLS.\), 29 U.S.C. §§ 201–219, and under 42 U.S.C. § 1983. These claims were dismissed, and are not at issue in this appeal. It appears that the individual defendants were named for purposes of the § 1983 claim only. The parties do not address whether the individual defendants are properly before the court on the state law claim, and thus, neither shall we. *Cf.* § 893.82, STATS. (specifying notice of claim requirements for suits against state officers, employees and agents).

employee-initiated wage claim actions to enforce DWD regulations. Thus, the questions we must decide are whether an employee-initiated suit for compensation for on-duty meal periods, based on DWD regulations, is properly brought under ch. 109, and whether such a claim can be brought against a state agency.

We review a motion to dismiss for failure to state a claim de novo, accepting as true the facts alleged and reasonable inferences drawn from those facts. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245, 249 (Ct. App. 1995). The pleadings are to be liberally construed, and a claim will be dismissed only if "it is quite clear that under no conditions can the plaintiff recover." *Id.* at 311, 529 N.W.2d at 249 (citations omitted). In this case, the officers' suit must be dismissed if it is barred by sovereign immunity, or if it is not cognizable under ch. 109, STATS. Otherwise, the officers have alleged sufficient facts to state a claim, and their suit may proceed.

*a. Sovereign immunity.*

The DOT contends that as a state agency it is protected by sovereign immunity because the legislature has not consented to suits against the State for wages due. We disagree.

Article IV, section 27 of the Wisconsin Constitution provides that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." Accordingly, the State of Wisconsin, including its arms and agencies, is immune from suit except where the legislature has consented to be sued. *See Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976). Legislative consent to

suit must be "clear and express." *See State v. P.G. Miron Constr. Co.,* 181 Wis. 2d 1045, 1052–53, 512 N.W.2d 499, 503 (1994).

■

We conclude that the legislature has expressly consented to suits by employees against the State as an employer under ch. 109, STATS. Section 109.03(5), STATS.,[3] provides that "[e]ach employe shall have a right of action against any employer for the full amount of the employe's wages due." The definition of employer in § 109.01(2), STATS.,[4] includes "the state and its political subdivisions." The plain statement in § 109.03(5) giving employees a right of action against their employers, coupled with the definition of employer in § 109.01(2), constitutes the required "clear and express" statutory consent to suit.

The DOT contends that under *Forseth v. Sweet,* 38 Wis. 2d 676, 683–84, 158 N.W.2d 370, 373–74 (1968),

---

[3] Section 109.03(5), STATS., provides:

ENFORCEMENT. Except as provided in sub. (1), no employer may by special contract with employes or by any other means secure exemption from this section. Each employe shall have a right of action against any employer for the full amount of the employe's wages due on each regular pay day as provided in this section and for increased wages as provided in s. 109.11(2), in any court of competent jurisdiction. An employe may bring an action against an employer under this subsection without first filing a wage claim with the department under s. 109.09(1). An employe who brings an action against an employer under this subsection shall have a lien upon all property of the employer, real or personal, located in this state as described in s. 109.09(2).

[4] Section 109.01(2), STATS., provides:

Except as provided in s. 109.07(1)(d), "employer" means any person engaged in any activity, enterprise or business employing one or more persons within the state, including the state and its political subdivisions and charitable, nonprofit or tax-exempt organizations and institutions.

and *Holzworth v. State*, 238 Wis. 63, 298 N.W. 163 (1941), the "mere inclusion of the State within a statutory definition, without mention of sovereign immunity, does not waive sovereign immunity even though it may create liability." We reject the DOT's interpretation of these cases. *Forseth* and *Holzworth* hold that the imposition of liability on the State does not necessarily entail legislative consent to suit. But neither *Forseth* nor *Holzworth* hold that the legislature must explicitly mention sovereign immunity in order to waive it. Nor do those cases suggest that the legislature's inclusion of the State in a statutory definition of entities subject to suit does not constitute consent to sue the State. The issues in *Forseth* and *Holzworth* are different from those at stake here. As the supreme court noted in *Holzworth*, the statute at issue there "does not create a cause of action in favor of or against *anyone*." *Holzworth*, 238 Wis. at 68, 298 N.W. at 165 (emphasis added). Chapter 109, STATS., by contrast, explicitly creates a cause of action against employers, and it explicitly includes the State within the definition of employer.

The DOT further contends that even if the legislature has waived the State's sovereign immunity for some wage claims under § 109.03(5), STATS., the legislature has not waived the State's sovereign immunity for the precise claims the officers bring here. The DOT contends that a general waiver of sovereign immunity, even if clear and express, is insufficient in light of the general rule that waivers of sovereign immunity must be construed narrowly in favor of the sovereign. According to the DOT, the legislature must clearly and expressly waive the State's sovereign immunity with respect to each type of claim that might be brought under § 109.03(5). We disagree. When a statute pro-

vides a clear, express and broadly worded consent to suit, we will not apply the rule of narrow construction anew to every type claim brought under that statute.

We rejected a similar argument in *Bahr v. State Investment Board*, 186 Wis. 2d 379, 521 N.W.2d 152 (Ct. App. 1994). In *Bahr*, the State Investment Board contended that the statute authorizing the board to "sue and be sued" did not amount to a waiver of sovereign immunity for the purposes of an employee's suit for reinstatement and back pay. *See id.* at 390–93, 521 N.W.2d at 155–56. We found persuasive the reasoning in *FDIC v. Meyer*, in which the United States Supreme Court considered a federal statute authorizing the Federal Savings and Loan Insurance Corporation to "sue and be sued":

> [The statute's] terms are simple and broad . . . . [W]e have recognized that such sue-and-be-sued waivers are to be "liberally construed," notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign.

*Meyer*, 510 U.S. 471, 480 (1994) (citations omitted). The Court held that, absent a "clea[r] show[ing]" that certain types of suits are not consistent with the statutory or constitutional scheme," agencies "authorized to 'sue and be sued' are presumed to have fully waived immunity." *Id.* at 480–81 (citations omitted). Applying the Supreme Court's reasoning to the facts at hand in *Bahr*, we concluded that "there is nothing in the legislature's grant of authority to the investment board that would indicate that its authorization of suits against the board should be read as anything other than a waiver of the board's immunity from suit." *Bahr*, 186 Wis. 2d at 394, 521 N.W.2d at 157.

The Supreme Court's reasoning in *Meyer* is persuasive here, as it was in *Bahr*. The terms of § 109.03(5), STATS., and § 109.01(2), STATS., are simple and broad, and nothing in those sections indicate that the legislature's consent to suits on wage claims against the State should be read as anything other than a full waiver of the State's immunity from suits by employees for wages due.

Moreover, the DOT's assertion of sovereign immunity in this case is not consistent with the wage claim enforcement scheme created in ch. 109, STATS. By virtue of the definition of "employer" in § 109.01(2), STATS., the wage claim law applies uniformly to public and private employers. The DOT's view of sovereign immunity would disrupt that uniformity. Private and local government employees could sue for all "wages due," even if the claim required judicial interpretation of the term "wages due." State employees, however, could bring wage claims only when the specific claim was expressly authorized by statute. Thus, if we were to accept the DOT's argument on this point, a private or municipal employee's claim for wages due for on-duty meal periods might be properly brought under § 109.03(5), STATS., but the identical claim by a state employee would be barred by sovereign immunity. Such a two-tiered application of the wage claim law contradicts the plain language of § 109.01(2), STATS. Accordingly, we conclude that the State's sovereign immunity does not bar the officers' present suit against the DOT.

### b. *Employee-initiated wage claims to enforce DWD hours and overtime regulations.*

The second issue in this appeal concerns the relationship between the wage claim law in ch. 109, STATS.,

and the hours and overtime provisions in §§ 103.01-.03, STATS. Section 109.03(1), STATS., provides that "[e]very employer shall as often as monthly pay to every employe engaged in the employer's business . . . all wages earned by such employe to a day not more than 31 days prior to the date of such payment." The wage claim law further provides, in § 109.03(5), that employees may sue their employers for wages earned, but not promptly paid:

> Each employe shall have a right of action against any employer for the full amount of the employe's wages due on each regular pay day as provided in this section and for increased wages as provided in s. 109.11(2), in any court of competent jurisdiction. An employe may bring an action against an employer under this subsection without first filing a wage claim with [DWD] under s. 109.09(1).

As discussed above, § 109.03(5) applies to the State, by virtue of the definition of "employer" in § 109.01(2), STATS.

The hours and overtime law, in § 103.02, STATS., requires DWD to promulgate rules regarding what periods of an employee's time should be compensated, and which of those periods should be compensated at overtime rates. Among the regulations promulgated by DWD under authority of § 103.02, STATS., is WIS. ADM. CODE § DWD 274.02(3), which requires employers to compensate employees for meal periods during which the employee remains on duty:

> The employer shall pay all employes for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work. Any meal period where the employe is

not free to leave the premises of the employer will
also be considered an on-duty meal period.

Section DWD 274.02(3) also applies to the officers and
the DOT, as would WIS. ADM. CODE § DWD 274.08,
should it be determined that the officers are entitled to
overtime compensation. *See* WIS. ADM. CODE §§ DWD
274.015; 274.01(3); and 274.08(2).

The question we face here is whether an employee
may sue his or her employer under § 109.03(5), STATS.,
for a wage claim that derives from WIS. ADM. CODE ch.
DWD 274, without first pursuing the claim with DWD.
The DOT contends that the officers' claim is not prop-
erly brought under ch. 109, STATS., because it has yet to
be determined whether the officers have in fact earned
wages during their meal periods. Employee-initiated
suits under § 109.03(5), STATS., according to the DOT,
are appropriate only "in the unusual circumstance
where, though wages are clearly owed to the employe,
the employer has failed to pay those wages promptly."
Employee-initiated suits are not appropriate where the
employer "legitimately disputes" whether wages are
due. Thus, the DOT argues, the officers may properly
pursue their claim only under ch. 103, STATS., which
does not, in the DOT's view, provide for employee-initi-
ated suits against employers. We disagree.

■■■■

We interpret chs. 103 and 109, STATS., to allow
employees to bring a wage claim such as the present
one to court. Our chief objective in statutory interpre-
tation is to discern the intent of the legislature. *See
Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559
N.W.2d 563, 566 (1997). We first look to the plain lan-
guage of the statute. *See id.* If the plain language is
ambiguous, we turn to extrinsic aids such as the legis-
lative history, scope, context and purpose of the statute

to determine legislative intent. *See id.* In construing multiple statutes, we must harmonize them, if possible, and read them together in a way that will give each full force and effect. *See City of Milwaukee v. Kilgore,* 193 Wis. 2d 168, 184, 532 N.W.2d 690, 695–96 (1995).

█

We begin with the text of § 109.03(5), STATS., which grants employees a right of action against employers. Section 109.03(5) provides simply that "[e]ach employe shall have a right of action against any employer for the full amount of the employe's wages due on each regular pay day." Wages are defined broadly in § 109.01(3), STATS., as:

> remuneration payable to an employe for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay . . . and any other similar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy.

Section 109.03(5), STATS., further provides that "[a]n employe may bring an action against an employer under this subsection without first filing a wage claim with the department under s. 109.09(1)." The text of § 109.03(5), does not expressly authorize employee-initiated suits for wage claims arising from DWD regulations, where it must first be determined whether the hours for which wages are claimed are "hours of work." However, nothing in the text of § 109.03(5) limits employee-initiated suits to claims for wages "clearly owed," and nothing precludes employee-initiated suits when the employer "legitimately disputes" whether wages are due.

537

The DOT argues that the officers' claim is prohibited by ch. 103, STATS. According to the DOT, the wage claim law in ch. 109, STATS., and the hours and overtime provisions in §§ 103.01-.03, STATS., are "two distinct statutory schemes." The DOT contends that ch. 103, STATS., provides the exclusive remedy for violations arising under regulations promulgated under the authority of § 103.02. We disagree. Chapter 103 does not provide the exclusive remedy for alleged violations of § 103.02.

Chapter 103, STATS., nowhere expressly limits the remedies for a violation of the hours and overtime regulations to those provided under ch. 103. The DOT argues, however, that ch. 103 provides a comprehensive administrative remedy, and that such comprehensive administrative remedies are presumed to be exclusive. Again, we disagree. The administrative remedies provided for violations of the hours and overtime provisions in §§ 103.01-.03, STATS., are not comprehensive. Section 103.005, STATS., defining the powers and duties of DWD, grants DWD the authority to investigate complaints, issue orders, and, under certain circumstances, hold hearings. *See* § 103.005(6). A truly comprehensive administrative remedy, such as that provided under the Wisconsin Fair Employment Act in § 111.39, STATS., provides for a detailed filing procedure, a complaint investigation and conciliation process, a de novo hearing on the allegations of the complaint, penalties and an appeal process.

Moreover, the presumption that an administrative remedy is exclusive does not apply if there is a legislative expression to the contrary. *See Gardner v. Gardner*, 175 Wis. 2d 420, 428, 499 N.W.2d 266, 269 (Ct. App. 1993). In chs. 103 and 109, the legislature has

indicated that the administrative remedies under ch. 103 are not exclusive. Section 103.005(14)(a), STATS., in prescribing the powers of DWD, provides that "[t]he department shall administer and enforce, *so far as not otherwise provided for in the statutes*, the laws relating to child labor, employment, employment offices and all other laws relating to the regulation of employment" (emphasis added). Section 109.03(5), STATS., provides for private enforcement of wage claims. We will not presume that an administrative remedy is exclusive in the face of statutory language expressly providing a private right of action.[5]

When we read them together, chs. 103 and 109, STATS., are not nearly so distinct as the DOT suggests. Both ch. 109, STATS., and WIS. ADM. CODE ch. DWD 274 explicitly provide that ch. 109 is the enforcement mechanism for claims arising under § 103.02, STATS. Section 109.09(1), STATS., states that ch. 109 provides an enforcement mechanism for claims arising under § 103.02:

> The department shall enforce this chapter and ss. 66.293, 103.02, 103.49, 103.82 and 104.12. In pursuance of this duty, the department may sue the employer on behalf of the employe to collect any wage claim or wage deficiency and ss. 109.03(6) and 109.11(2) and (3) shall apply to such actions.

---

[5] We acknowledge the DOT's argument that the officers are really seeking a determination of whether their lunch periods are "hours of work," but that is part and parcel of their claim for wages due. The amount of pay—or possibly, compensatory time—the officers may ultimately be found to have due them must necessarily await a determination of whether *any* compensation is due them for lunch periods. Nonetheless, the essence of the officers' claim is that they are due compensation that the DOT has not paid.

According to DWD regulations, ch. 109 provides the penalties for violations of WIS. ADM. CODE § DWD 274.02, a code section from which the officers' claims, at least in part, derive: "[a]ny employer who violates order § DWD 274.02 . . . shall be subject to the penalties provided in § [ ] . . . 109.11, STATS." WIS. ADM. CODE § DWD 274.07. Although § DWD 274.07 does not explicitly refer to employee-initiated litigation, we note that § 109.11(2), STATS., includes provisions relating to civil penalties in employee-initiated wage claim actions.

Finally, the legislative history of ch. 109, STATS., also supports the conclusion that ch. 109 is not a "distinct statutory scheme," but rather provides an enforcement mechanism for claims under § 103.02, STATS. Prior to 1975, Wisconsin's wage claim law was part of ch. 103. *See* § 103.39, STATS., 1973–74. The § 103.39 wage claim provision also granted employees a private cause of action against their employers for the full amount of wages due.[6] In 1975, prompted by several large industrial plant closings, the provisions of old § 103.39 were consolidated with related wage payment provisions and a new plant closing notification law in what is now ch. 109. *See* Laws of 1975, ch. 380; *see also* WISCONSIN LEGISLATIVE COUNCIL, REPORT NO. 9 TO THE 1975 LEGISLATURE ON LEGISLATION RELATING TO EMPLOYE PROTECTION IN BUSINESS CLOSINGS (April 15, 1975). The provisions in the new ch. 109 relating to court actions on wage claims, § 109.03(5)–(6), STATS., 1975–76, remained substantially as they had been

[6] Section 103.39, STATS., 1973–74, provided, in part, that

each employe coming within the meaning of this section shall have a right of action against any [employer] for the full amount of his wages due on each regular pay day as herein provided, in any court of competent jurisdiction.

under old § 103.39. *See* WISCONSIN LEGISLATIVE COUNCIL, REPORT NO. 9 at 3. We conclude from this history that legislature did not intend to prevent the enforcement of ch. 103 by wage claim actions when it moved the wage claim enforcement provisions to a separate chapter.

In 1993, the legislature amended ch. 109, STATS., to facilitate agency enforcement of wage claims by repealing the requirement that employees assign their claims to the enforcing agency before the agency could pursue the claim. *See* 1993 Wis. Act 86, § 4. The 1993 amendment also provided that employees could recover greater penalties by allowing the agency to investigate wage claims before filing their own wage claim actions. *See id.*, § 12. But the 1993 amendment also added the following clarifying language to § 109.03(5), STATS.: "An employe may bring an action against an employer under this subsection without first filing a wage claim with the department under s. 109.09(1)." *See* 1993 Wis. Act 86, § 2. With this language, the legislature plainly stated its intent not to restrict an employee's private right of action for wages due, even though it encouraged agency enforcement of wage claims.[7]

In sum, we find nothing in the text of chs. 103 and 109, or in the legislative history of ch. 109, to support the DOT's contention that the two chapters are "distinct statutory schemes," and that ch. 103 provides the exclusive remedy for violations of the hours and overtime regulations in WIS. ADM. CODE ch. DWD 274. To the contrary, we conclude that ch. 109 is properly

---

[7] The Legislative Reference Bureau analysis for the 1993 legislation explained that "the bill also adds language to make it clear that an employe is not required to file a claim with DILHR before going to court on his or her own." LRB ANALYSIS, 1993 SENATE BILL 509 (draft March 23, 1993).

viewed as a mechanism for the enforcement of claims arising from ch. 103, including those arising under the regulations promulgated by DWD in furtherance of § 103.02, STATS. We also find no indication that the legislature intended the scope of employee-initiated wage claim actions to be more limited than the scope of the actions that DWD is authorized to pursue on the employee's behalf. And finally, we conclude that it would be inefficient and impractical to allow an employee who contends he or she has a claim for compensation based both on a contract and on a DWD regulation enacted under ch. 103 to proceed on the former in court, while requiring the employee to pursue the latter claim only before DWD.

Accordingly, we interpret the authorization for employee-initiated suits for wages due under § 109.03(5), STATS., to include those wage claims that DWD is expressly authorized to pursue on the employee's behalf. Section 109.09(1), STATS., authorizes DWD to enforce the provisions of ch. 109 and §§ 66.293, 103.02, 103.49, 103.82 and 104.12, STATS. We conclude, therefore, that employee-initiated suits are likewise authorized for claims arising under the statutes enumerated in § 109.09(1), and from regulations promulgated under the authority of these statutes.

The DOT's concern that employees could bring "any court claim they can conjure simply by seeking wages as a remedy" is unwarranted and overstated. The statutes cited by the DOT that might permit the recovery of wages, unlike § 103.02, STATS., explicitly require the exhaustion of administrative remedies. Claims by inmates for wages, under chs. 301 and 303, STATS., would require inmates to exhaust administrative remedies under the Inmate Complaint Review System before seeking judicial review. See § 801.02(7),

STATS.; WIS. ADM. CODE § DOC 310.04. Worker's compensation claims have to be pursued through the worker's compensation system in ch. 102, STATS., and judicial review is available only as provided in § 102.23(1)(a), STATS. Section 63.14, STATS., involves wage rates in a county civil service classification system, and such claims would have to be brought to the county civil service commission. As for the enforcement of collective bargaining agreements, § 111.07, STATS., explicitly provides for administrative remedies, judicial review and under certain circumstances direct access to the courts. The supreme court has held that ch. 109, STATS., cannot be used to enforce the terms of a collective bargaining agreement with a municipal employer because the more specific terms of § 111.70, STATS., apply. *See AFSCME Local 1901 v. Brown County*, 146 Wis. 2d 728, 432 N.W.2d 571 (1988).

If we were to bar the officers' claim, we would risk vitiating an employee's private right of action for wages due. If an employee-initiated wage claim could not be brought under ch. 109 merely because it was disputed on hours and overtime grounds, an employer could defeat an employee's suit merely by alleging that the employee was "off-duty" during part of the time for which the employee is claiming wages due. The "off-duty" allegation would require an interpretation of WIS. ADM. CODE § DWD 272.12(2)(b) (which is made applicable to hours and overtime disputes by virtue of WIS. ADM. CODE § DWD 274.045). Thus, an employer could convert the employee's ch. 109 claim for wages due to a ch. 103 claim to determine whether wages were due, thereby avoiding the employee-initiated suit and the penalties provided by ch. 109.

We recognize that agency enforcement of agency regulations promotes uniformity in the development and application of regulations within agency's specialized expertise. *See, e.g., City of Brookfield v. Milwaukee Sewerage Dist.*, 171 Wis. 2d 400, 416–24, 491 N.W.2d 484, 490–93 (1992) (when both court and agency have jurisdiction over dispute, court should exercise discretion to relinquish jurisdiction to agency in technical matters beyond the expertise of the court). Nevertheless, courts are regularly called upon to interpret agency regulations, and WIS. ADM. CODE §§ DWD 274.02(3) and 274.08(2) are not particularly complex or technical in nature. Furthermore, § DWD 274.08(2) requires the interpretation of federal law, a task at which the courts are as competent as DWD. Therefore, we conclude this case presents no question so complex that a court, out of comity or necessity, needs to refer it to an agency for resolution.

## CONCLUSION

For the foregoing reasons, we conclude that the officers' claim for compensation for their meal periods is properly brought under § 109.03(5), STATS. We also conclude that the DOT is not protected by sovereign immunity for a wage claim brought under ch. 109, STATS., by DOT employees. Accordingly, we affirm the trial court's denial of the DOT's motion to dismiss the officers' suit.

*By the Court.*—Order affirmed.